IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERMAN SANTIAGO ARROYO LOPEZ,

      Petitioner,

v.                                               No. 2:26-cv-00119-KG-KRS

KRISTI NOEM, et al.,

      Respondents.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on German Santiago Arroyo Lopez's Petition for a Writ of Habeas Corpus, Doc. 5, and the Government's Response, Doc. 11. For the reasons below, petitioner's habeas petition is granted.

## I.   *Background*

Mr. Arroyo Lopez, a citizen of Mexico, entered the United States without inspection in 1996. Doc. 5 at 1. Prior to his detention, he resided with his wife and three U.S. citizen children, one of whom is a minor with medical needs. *Id.* He had worked as a car detailer in Glenview, Illinois, for approximately twenty years and is the "primary breadwinner" for his family. *Id.* He has no criminal history. *Id.* at 8.

On November 4, 2025, Immigration and Customs Enforcement ("ICE") officers arrested Mr. Arroyo Lopez while he was on his lunch break. *Id.* at 5. Mr. Arroyo Lopez is detained at the Otero County Processing Center in Chaparral, New Mexico. *Id.* ICE has initiated removal proceedings but has not entered an order of removal. *Id.* at 2.

## II.    *Standard of Review*

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973).  Habeas corpus review is available if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

## III.    *Analysis*

For the reasons below, the Court finds that (A) 8 U.S.C. § 1226 governs Mr. Arroyo Lopez's detention, (B) Mr. Arroyo Lopez's detention violates his right to due process, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

### A.    *Section 1226 governs Mr. Arroyo Lopez's detention.*

The INA establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted."  The "provision mandates detention and affords no bond hearing."  *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.).  By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed."  Noncitizens "detained under this second detention regime are entitled to individualized bond hearings at the outset of detention."  *Id.*

Consistent with the overwhelming majority of district courts to consider the issue and this Court's prior findings, the Court finds that § 1226 governs here.  *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting 362 district-court opinions nationwide and noting that challengers prevailed in at least 350 of them, in decisions by over 160 judges across

2

fifty courts); *Pu Sacvin*, 2025 WL 3187432 (Gonzales, J.); *Danierov v. Noem*, 2026 WL 45288, at *2 (D.N.M.) (Gonzales, J.).  The Court acknowledges the recent Fifth Circuit decision holding that "[w]hile [noncitizens] remain applicants" for admission, "they are...seeking admission." *Buenrostro-Mendez v. Bondi*, --- F.4th ----, 2026 WL 323330, at *5 (5th Cir.).  The Tenth Circuit has not yet addressed this question.  Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted *or* who arrives in the United States."  In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission" (emphasis added).  Noncitizens "seeking admission" are those who have not "effected an entry" into the United States.  *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020).  Noncitizens "who entered the country years earlier" are not "seeking admission," and therefore fall under § 1226 rather than § 1225(b)(2)(A).  *Pu Sacvin*, 2025 WL 3187432, at *3.

Under this framework, § 1226 governs Mr. Arroyo Lopez's detention.  ICE arrested him 29 years after his initial entry into the United States and did not apprehend him at or near the border.  Accordingly, § 1225's mandatory detention provision does not apply because Mr. Arroyo Lopez effected an entry into the United States by living here for nearly three decades.  *Pu Sacvin*, 2025 WL 3187432, at *3.  As the Government concedes, the facts of this case are "substantially similar" to those in *Patel v. Noem*, 2026 WL 103163 (D.N.M.), where this Court granted relief.  Doc. 11 at 2.

### B.    *Mr. Arroyo Lopez's detention violates his right to due process.*

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution."  *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).  Here, Mr. Arroyo Lopez has a protected liberty interest.  Once released from

3

immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Danierov*, 2026 WL 45288, at *2.  Mr. Arroyo Lopez's prior release allowed "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Indeed, Mr. Arroyo Lopez has lived in the United States for 29 years, has worked as a car detailer for twenty years, and has three U.S. citizen children.

Mr. Arroyo Lopez was also entitled to procedural safeguards before he was detained.  In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  To start, Mr. Arroyo Lopez's private interest in remaining free from detention is substantial.  "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

There is also a significant risk of erroneous deprivation.  Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking release.  *Danierov*, 2026 WL 45288, at *2.  ICE detained Mr. Arroyo Lopez after 29 years of liberty without an assessment of any material facts had changed, creating a substantial risk of erroneous deprivation of his liberty interest.

Finally, the Government's interest in detaining Mr. Arroyo Lopez without a hearing is limited, and the administrative burden of providing a bond hearing is minimal.  *See Danierov*, 2026 WL 45288, at *2 (the "cost of providing a bond determination is not terribly burdensome").

**C.      *The remedy is a bond hearing where the Government bears the burden of proof.***

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Arroyo Lopez is a flight risk or danger to the community. Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Mr. Arroyo Lopez's "unlawful detention in violation of his constitutional rights shifts that burden to the Government." *Pu Sacvin*, 2025 WL 3187432, at *3. A noncitizen's "strong private interest in being free from civil detention" outweighs the Government's "comparatively minimal burden to justify custody." *Id.*

**IV.      Conclusion**

The Court therefore grants Mr. Arroyo Lopez's petition, Doc. 5. The Court orders the Government to provide Mr. Arroyo Lopez with a bond hearing under § 1226(a) before an immigration judge within seven (7) business days. At that hearing, the Government must justify Mr. Arroyo Lopez's detention by clear and convincing evidence. If the Government fails to provide a bond hearing that complies with these procedures, it must release Mr. Arroyo Lopez. The Court also orders the Government to file a status report within ten (10) business days of this Order confirming that it has provided Mr. Arroyo Lopez with a bond hearing or released him.

IT IS SO ORDERED

s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.